**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>              Plaintiff,<br><br>v.<br><br>Marcelino Portillo-Rivera,<br><br>              Defendant. | No. CR-15-01183-PHX-NVW<br><br>**FINDINGS OF FACT,**<br>**CONCLUSIONS OF LAW, and**<br>**ORDER** |

Before the Court is Defendant's Motion to Suppress Defendant's Statements for *Miranda* Violation and Lack of Voluntariness (Doc. 17) and accompanying briefs. Based on the following findings of fact and conclusions of law, the motion will be denied.

**I.    BACKGROUND**

The following facts are undisputed. On September 16, 2015, United States Border Patrol agents encountered Marcelino Portillo-Rivera approximately fifteen miles south of Eloy, Arizona. They determined he was in the United States illegally and detained him. They searched the area and found a loaded shotgun and ammunition. Portillo-Rivera said the shotgun was not his and that it belonged to his friends. The agents read him his *Miranda* rights and drove him to a Border Patrol station.

At the station, Portillo-Rivera was advised of his *Miranda* rights again. He signed a waiver of these rights ("the *Miranda* waiver") and asked a question about his attorney. An agent filed a follow-up report ("the Report") stating Portillo-Rivera "did not agree to answer questions and give a statement." Later, the agent filed an amended report stating Portillo-Rivera "did agree to answer questions and give a statement."

After Portillo-Rivera signed the *Miranda* waiver, three agents jointly interviewed him. The interview was video recorded. At the beginning of the interview, the agents reviewed the *Miranda* waiver with Portillo-Rivera. He asked another question about his attorney, and an agent answered. Portillo-Rivera then admitted the shotgun was his and that he hid it when he saw agents approaching. He also signed a form allowing the agents to search his cell phone ("the Consent form"). The subsequent search revealed photographs of the shotgun. Now he is charged with being an alien in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(5)(A) and 924(a)(2).

Portillo-Rivera moves to suppress his statements given during interrogation and any evidence resulting therefrom. (Doc. 17 at 1.) He claims (i) he invoked his right to counsel during the interview, which prohibited further questioning under *Edwards v. Arizona*, 451 U.S. 477 (1981); (ii) the agents failed to clarify his request for counsel as required under *Davis v. United States*, 512 U.S. 452 (1994); and (iii) the agents used a two-step interrogation technique in violation of *Missouri v. Seibert*, 542 U.S. 600 (2004). (*Id.* at 1-2, 5-6.)

On November 24, 2015, an evidentiary hearing was held. Portillo-Rivera was represented by counsel. The Court heard testimony from Border Patrol agents who detained and interviewed Portillo-Rivera, the agent who filed the Report, and Portillo-Rivera. The *Miranda* waiver, the Consent form, and a transcript and recording of the interview were admitted in evidence. The Court took the matter under advisement and now makes the following findings of fact and conclusions of law.

II. **FINDINGS OF FACT**

1. Portillo-Rivera understood his *Miranda* rights upon hearing them read by a Border Patrol agent before arriving at the station.
2. Portillo-Rivera understood his *Miranda* rights upon reading the *Miranda* waiver at the station.
3. Portillo-Rivera's first signature on the *Miranda* waiver attests that he understood his *Miranda* rights.
4. Portillo-Rivera's second signature on the *Miranda* waiver attests that he knowingly and intelligently waived his *Miranda* rights.
5. The Report's initial statement that Portillo-Rivera "did not agree to answer questions and give a statement" was a typographical error caused by checking the wrong box on a computer screen.
6. Before the recorded interview, Portillo-Rivera asked whether he would still be able to have an attorney during trial if he talked with the Border Patrol agents. An agent answered yes.
7. At the beginning of the interview, Portillo-Rivera was asked whether he understood his *Miranda* rights. He nodded yes and said "Mm-hm."[1]
8. Portillo-Rivera was also asked whether he was willing to talk without an attorney. He nodded yes.
9. Portillo-Rivera was also asked whether he had any questions about his rights. He said: "I asked [an agent] why he was having me sign [the *Miranda* waiver] if I have an attorney there since I have court on the fourth." He reiterated: "[I]f I signed [the *Miranda* waiver] would I still have the right to talk to my attorney who… who I have in court."

---

[1] Although the interview was conducted in Spanish, the transcript has an English translation. Direct quotations are from the transcript.

- 3 -

10. In response to these questions, an agent said: "Yes. Like at any time if you don't want to… like answer any questions you can say that I don't want to talk anymore, I want my attorney."

11. Portillo-Rivera did not say anything else about an attorney.

12. Portillo-Rivera did not unambiguously request an attorney.

13. The agents did not deliberately interrogate Portillo-Rivera before giving a *Miranda* warning.

14. Portillo-Rivera's testimony at the hearing contained multiple contradictions and was not credible. To the extent he claimed something beyond what is otherwise demonstrated in the record, the Court is not persuaded.

## III.  CONCLUSIONS OF LAW

1. Portillo-Rivera did not invoke the right to counsel with the clarity necessary to prohibit further questioning. *Davis*, 512 U.S. at 459 ("[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal . . . , our precedents do not require the cessation of questioning.").

2. The agents were not obliged to clarify Portillo-Rivera's questions about counsel. *Davis*, 512 U.S. at 461 ("[W]hen a suspect makes an ambiguous or equivocal statement it will often be good police practice for the interviewing officers to clarify whether or not he actually wants an attorney. . . . But we decline to adopt a rule requiring officers to ask clarifying questions.").

3. The agents did not use an unlawful two-step interrogation process. *See Seibert*, 542 U.S. at 611 (plurality opinion) (addressing "technique of interrogating in successive, unwarned and warned phases"); *Seibert*, 542 U.S. at 622 (Kennedy, J., concurring) (limiting the holding to "deliberate" uses of this technique).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IT IS THEREFORE ORDERED that Defendant's Motion to Suppress Defendant's Statements for *Miranda* Violation and Lack of Voluntariness (Doc. 17) is denied.

Dated this 2nd day of December, 2015.

*Neil V. Wake*
Neil V. Wake
United States District Judge